ATTORNEYS FOR APPELLANTS
Larry F. Whitham
Jonathan L. Whitham
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Sue A. Shadley
John. M. Ketcham
Amy E. Romig
Indianapolis, Indiana



FILED
Feb 10 2011, 10:42 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 48S00-1003-PL-158

KILLBUCK CONCERNED CITIZENS
ASSOCIATION, BY ITS CHAIRMAN
WILLIAM F. KUTSCHERA, AND
DANIEL B. SPALL,

*Appellants (Plaintiffs below)*,

v.

J.M. CORPORATION, AND
RALPH REED,

*Appellees (Defendants below)*,

MADISON COUNTY BOARD OF
ZONING APPEALS,

*Interested Party.*

Appeal from the Madison Superior Court, No. 48D01-0806-PL-996
The Honorable Michael D. Keele, Special Judge

On Direct Appeal

**Sullivan, Justice.**

In 1981, Madison County zoning authorities granted a special use permit to J.M. Corporation ("JMC") to establish a landfill. Over the intervening decades, JMC has engaged in substantial construction of the facility but has not been able to obtain an operating permit from environmental authorities. On March 24, 2008, the Legislature passed a law applying only to facilities for which a county zoning permit had been approved before April 1, 1985. The law provided that any such "facility . . . that did not accept waste before April 1, 2008[,]" had to return to the county zoning authorities for a new permit. Ind. Code § 13-20-2-11 (Supp. 2008). Because JMC's facility did accept waste before April 1, 2008, the new law does not apply to it.

## Background

The battle between the parties in this case has raged for over thirty years. Their dispute has spawned many decisions by county and state regulators and two published opinions by the Indiana Court of Appeals. The procedural history is extensive and we set forth only a limited amount of it here.

In 1979, JMC sought local zoning from the Madison County Board of Zoning Appeals by filing a Petition for Special Use to establish a landfill, the Mallard Lake Landfill, on a portion of its property in Madison County, Indiana. The Board granted this petition in 1981.

After obtaining zoning approval, JMC applied to the Indiana State Board of Health (the predecessor to the Indiana Department of Environmental Management ("IDEM")) for a permit to construct the Mallard Lake Landfill.[1] The State Board of Health approved JMC's construction

---

[1] Prior to 1989, the process of constructing and operating a landfill was two-fold. First, one must have obtained a construction permit to construct the landfill. 329 Ind. Admin. Code 1.5-3-1 (Supp. 1989). Second, one must have obtained an operating permit to operate the landfill. 329 Ind. Admin. Code 1.5-5-1 (Supp. 1989). An operating permit would be issued only after all construction specified by the construction permit was completed. 329 Ind. Admin. Code 1.5-1-5 (Supp. 1989). In 1989, the two-fold

permit in 1984. Killbuck Concerned Citizens Association ("KCCA"), an association of Madison County residents, some owning real estate in close proximity to the proposed landfill, appealed this approval. The appeal was resolved, and JMC's construction permit was approved in September, 1986.

JMC began construction of the Mallard Lake Landfill and completed the first fill area in late 1987. After completing construction, JMC applied to IDEM[2] for an operating permit. IDEM approved the operating permit in 1988; KCCA appealed this approval.[3] In 1995, JMC's operating permit was approved by an Order of the Indiana Office of Environmental Adjudication ("OEA").[4] KCCA appealed again. In 1997, the Indiana Court of Appeals remanded the case back to the OEA to determine whether the landfill included a certain "barrier" and then, after making this determination, to either approve or deny JMC's operating permit. Office of Envtl. Adjudication v. J.M. Corp., 691 N.E.2d 449, 459 (Ind. Ct. App. 1997), trans. denied.

On remand, by an Order dated July 2, 1998, the OEA once again found that the operating permit should be granted. By that time, however, the federal government had passed new environmental legislation that had changed the laws regarding landfill barriers. JMC and IDEM therefore met several more times in an attempt to finalize the operating permit, but their efforts failed. The matter was appealed; KCCA participated as an intervenor.

The OEA resolved this appeal by an Order dated October 20, 2004. It concluded that an operating permit had been issued to JMC on July 2, 1998, and that IDEM had improperly denied JMC's permit renewal application and request for an extension of time. It ordered IDEM to reinstate JMC's permit renewal application and review it in accordance with all applicable laws;

process of obtaining a construction and operating permit was consolidated into obtaining one solid waste facility permit. 329 Ind. Admin. Code 2-8-1 (1992).

[2] IDEM was established in 1986. About IDEM, http://www.in.gov/idem/4097.htm (last visited Feb. 10, 2011).

[3] The Indiana General Assembly passed new financial-assurance legislation while the operating permit appeals were pending. Whether this new law applied to JMC resulted in an appeal to the Indiana Court of Appeals, in which KCCA participated as amicus. Prosser v. J.M. Corp., 629 N.E.2d 904 (Ind. Ct. App. 1994).

[4] The OEA was created in 1995 to review decisions of IDEM. OEA: About Us, http://www.in.gov/oea/2339.htm (last visited Feb. 10, 2011).

to grant JMC's request for an extension of time; and to use its best professional judgment regarding the barrier issue.

Meanwhile, the Legislature had passed the statute at issue in this case, which took effect on March 24, 2008 (while IDEM and JMC were in the process of renewing and modifying JMC's operating permit). Pub. L. No. 114-2008, § 18, 2008 Ind. Acts 1677, 1688. The new law provides:

> (a) <u>This section applies only</u>:
>> (1) in a county that zones under IC 36-7-4; and
>> (2) to a <u>facility</u>:
>>> (A) for which the zoning required for the construction of the facility was approved before April 1, 1985;
>>> (B) for which the department issued a valid construction permit under this chapter before April 1, 2008; and
>>> (C) <u>that did not accept waste before April 1, 2008.</u>
>
> (b) The person that holds the permit referred to in subsection (a)(2)(B) may begin or complete construction of the facility referred to in subsection (a)(2) only if after April 1, 2008, the zoning authority that has jurisdiction reviews and approves the:
>> (1) appropriateness; and
>> (2) legality;
>
> of the zoning referred to in subsection (a)(2)(A) under the requirements of all applicable zoning laws existing at the time of the review.

Ind. Code § 13-20-2-11 (Supp. 2008) (emphasis added).

Within days of the statute's passage, JMC notified IDEM that it would be installing and operating a collection container system, the Mallard Lake Landfill Collection Container System, on its property.[5] Between March 29, 2008, and March 31, 2008, the Mallard Lake Landfill Collection Container System received household trash from paying customers.

On June 5, 2008, KCCA filed an action seeking a declaratory judgment that Indiana Code section 13-20-2-11 applied to JMC, requiring that it seek current zoning approval from the Madi-

---

[5] A "collection container system" is defined in the Indiana Administrative Code as "a group of containers for solid waste collection from noncommercial, nonindustrial, and noninstitutional sources, and made available for use by the general public, such as a county wide collection box system." 329 Ind. Admin. Code 10-2-31 (2008).

son County Board of Zoning Appeals. Both JMC[6] and KCCA filed motions for summary judgment. Specifically, JMC argued (1) that the statute did not apply because it had accepted waste or because it had completed the construction authorized by its construction permit; (2) that the statute violated the Indiana Constitution because it was special legislation that either attempted to regulate county business or could have been made generally applicable; and (3) that neither KCCA nor Daniel B. Spall[7] had standing to bring this action.

The trial court granted JMC's motion for summary judgment and denied KCCA's motion. It held that while KCCA and Spall had standing and the statute applied to JMC, Indiana Code section 13-20-2-11 violated the Indiana Constitution because it was a special law that could have been made to apply generally. Both JMC and KCCA appealed.

Although this Court has mandatory and exclusive jurisdiction over this appeal because of the trial court's ruling that the statute was unconstitutional, Ind. Appellate Rule 4(A)(1)(b), we refrain from deciding this case on that issue. Specifically, because we conclude that the statute does not apply to JMC, we find it unnecessary to and do not consider the constitutionality of Indiana Code section 13-20-2-11.[8] See Bayh v. Sonnenburg, 573 N.E.2d 398, 402 (Ind. 1991) (noting "'the duty of the court not to enter upon the consideration of a constitutional question where the court can perceive another ground on which it may properly rest its decision'" (citation omitted)); see also Bureau of Motor Vehicles v. Scott, 497 N.E.2d 557, 559 (Ind. 1986) (same); Applegate v. State ex rel. Bowling, 158 Ind. 119, 63 N.E. 16, 18 (1902) (same).

---

[6] Ralph Reed, as owner of JMC, was also named as a defendant. Reed sought summary judgment on the ground that he was not a proper party to this action because Indiana Code section 13-20-2-11 applies only to the "person that holds the permit" issued by IDEM, and no such permit had ever been issued to him. The trial court dismissed Reed from the case. On appeal, JMC requests that this Court affirm the trial court's dismissal of Reed, and KCCA does not challenge this request. We conclude that Reed was properly dismissed.

[7] As the other named plaintiff in this case, Spall is a member of KCCA who owns property adjacent to the Mallard Lake Landfill. Because we conclude that the statute does not apply to JMC, we assume without deciding that KCCA has standing here.

[8] On July 12, 2010, KCCA filed a Motion to Strike a portion of JMC's Reply Brief addressing the constitutionality issue. Given our resolution of this case, we do not rule on this motion.

**Discussion**

By its terms, Indiana Code section 13-20-2-11 applies only "to a facility . . . that did not accept waste before April 1, 2008." Thus, while this case presents several issues, we find as dispositive the issue of whether JMC's facility accepted waste before the applicable deadline.

The trial court concluded that JMC's operating a collection container system did not constitute accepting waste. Specifically, it found that "[t]he provisions of [Indiana Code section] 13-20-2 *et seq.* apply to permits for solid waste landfills, and the operation of a container collection system upon [JMC's property] did not constitute the acceptance of waste by a solid waste landfill." Appellant's App. 13. We disagree. The language of Indiana Code section 13-20-2-11 is clear; it applies only to a "<u>facility</u>" that did not "<u>accept</u> <u>waste</u>" before the applicable deadline. Applying the recognized definitions of each of these words, we can only conclude that the statute does not apply to JMC.

First, the statute says "facility" – it does not say "landfill."[9] The Indiana Code does not provide a definition of "facility" to be used in this particular section, which addresses permits for solid waste landfills. <u>See</u> Ind. Code § 13-11-2-77 (Supp. 2008) (providing definitions of "facility" to be used in various other sections). It does, however, provide a definition to be used in a section concerning solid waste permits in general. <u>See</u> Ind. Code § 13-15-1-3 (2004) (providing for the issuance of permits to control solid waste). It defines "facility" for purposes of that section as "a structure or an area of land used for the disposal, treatment, storage, recovery, processing, or transferring of solid waste." Ind. Code § 13-11-2-77(a) (Supp. 2008). The term includes solid waste landfills, <u>id.</u>, but it is not limited to them. The Indiana Code also provides a definition to be used in an article concerning solid waste management. <u>See</u> Ind. Code § 13-21 (Supp. 2008) (providing for solid waste management plans and districts). "Facility" for purposes of that section "means a facility, a plant, a works, a system . . . or other real or personal property of any nature that is to be used, occupied, or employed for the collection, storage, . . . or disposal

---

[9] The Indiana Code defines "landfill" for purposes of Ind. Code chapter 13-20-2 as "a solid waste disposal facility at which solid waste is deposited on or beneath the surface of the ground as an intended place of final location." Ind. Code § 13-11-2-116(a) (Supp. 2008).

6

of solid waste." Ind. Code § 13-11-2-77(d) (Supp. 2008). The Indiana Administrative Code provides yet another similar definition for use in an article regulating solid waste land disposal facilities: "'Facility' may consist of one (1) or more permitted processing, storage, disposal, or operational units used for processing, storing in conjunction with processing or disposal, or disposing of solid waste[,] . . . [including] all conterminous land and structures related to the permit within the facility boundary; . . . other appurtenances[;] . . . and improvements." 329 Ind. Admin. Code 10-2-69 (2008). Thus, the term "facility" covers many waste operations, including both the disposal and storage of waste.

These definitions lead us to conclude that JMC's facility is the area of land JMC uses to operate the Mallard Lake Landfill and includes other operations on the same land used for a related purpose. The Mallard Lake Landfill Collection Container System, as its name suggests, was installed on the same area of land as the landfill and was used for the storage of waste; it was a component of JMC's facility.[10] Put another way, JMC's facility includes both its landfill (disposal operation) and collection container system (storage operation).

Moreover, JMC's facility was only required to have "accepted" waste before the applicable deadline – waste was not required to be "deposited" or "disposed of" as it would be in a landfill, as noted in footnote 9, supra. Because neither the Indiana Code nor the Indiana Administrative Code provides a definition, we look to an English dictionary for guidance: one definition provides that to "accept" is "to receive with consent." Webster's Third New International Dictionary 10 (1976). JMC's facility undoubtedly accepted waste by receiving it willingly in exchange for money.

Lastly, KCCA does not dispute that the household trash accepted at JMC's facility is "waste." And, the Indiana Code defines "solid waste" for purposes of related sections as "any garbage . . . or other discarded material . . . resulting from . . . community activities." Ind. Code § 13-11-2-205 (2004). Further, in State v. Money, the court held that residential trash was included under a similar definition of "solid waste" in use at the time. 651 N.E.2d 344, 345-46

---

[10] As a related matter, the Indiana Administrative Code provides regulations for the operation and maintenance of collection container systems at landfills. 329 Ind. Admin. Code 10-20-4(g) (2008).

(Ind. Ct. App. 1995), <u>trans.</u> <u>denied</u>.  The household trash accepted at JMC's facility is waste for purposes of this statute.

Because JMC's facility accepted waste before April 1, 2008, we conclude that Indiana Code section 13-20-2-11 does not apply in this case.

## Conclusion

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.